NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0211n.06

No. 16-6480

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 11, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CHARMEAIRRIA HARRIS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| LEXINGTON-FAYETTE URBAN COUNTY | ) | COURT FOR THE EASTERN |
| GOVERNMENT, et al., | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: COLE, Chief Judge; SUTTON and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Charmeairria Harris was arrested and booked into the Lexington-Fayette county jail, which confiscated the cash she had on her person and released her the next day. Harris sued the County under Kentucky law and 42 U.S.C. § 1983, alleging that the confiscation violated the Fourth and Fourteenth Amendments. In response, the County submitted evidence that it had refunded Harris's money soon after her release. Hence, the County moved to dismiss for lack of standing and failure to state a claim. The district court granted the motion to dismiss, holding on the merits that Harris had failed to state a claim under § 1983. We affirm.

I.

When an arrestee is booked into the Lexington-Fayette county jail, the jail takes any cash she has on her person and deposits it into a canteen account, which she can use to purchase

goods at the jail commissary. Under Kentucky law, the jail may then deduct fees from the inmate's account to cover some of the costs of her booking and incarceration. *See* Ky. Rev. Stat. § 441.265. Harris was booked into the jail on October 11, 2015. According to her complaint, at the time of her booking she "was in possession of $30 in cash," which the jail "confiscated and kept" to cover her "alleged costs of confinement." At some point (the complaint does not say when), the jail discovered that Harris had been arrested pursuant to a warrant for her identical-twin sister, Charmaine Jones. Harris was then released and the charges against her were dropped.

A few months later, Harris sued both the County and Rodney Ballard, the County's director of corrections. Harris alleged that the defendants had violated Ky. Rev. Stat. § 441.265, the Fourth Amendment, and the due-process clause of the Fourteenth Amendment by charging her for the costs of her incarceration, when no sentencing court had ordered the payments and when she had been given no "meaningful opportunity to object." Harris also raised several other state-law claims, including for conspiracy, conversion, fraud, negligence, and violations of the Kentucky Constitution.

The defendants moved to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. The defendants also submitted an affidavit from a jail employee and copies of the jail's accounting records, which purportedly showed that the County had refunded all the money taken from Harris on October 11. Harris then moved to amend her complaint and submitted an affidavit denying that she had received a full refund.

The district court did not decide whether Harris had standing to sue, instead holding that she had failed to state a claim under § 1983. Thus, the court denied Harris's motion to amend

her complaint, dismissed the federal claims with prejudice, and declined to exercise supplementary jurisdiction over the state-law claims. Harris now appeals, arguing primarily that the jail never refunded her money and that the defendants violated her right to due process.

II.

A.

As a threshold matter, the County argues that Harris lacks standing. Although the district court decided the case on other grounds, we have a constitutional "obligation to assure that standing exists" before we can address the merits. *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

Ordinarily, to establish Article III standing at the motion-to-dismiss stage, a plaintiff need only "allege" that she has suffered an injury traceable to the defendant's conduct and likely to be redressed by the requested relief. *Daubenmire v. City of Columbus*, 507 F.3d 383, 388 (6th Cir. 2007); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Here, Harris satisfied that requirement by alleging that the jail "confiscated and kept" her $30.

The County contends, however, that Harris must support that allegation with evidence, because the County produced evidence that it refunded her money. When a defendant challenges the "factual existence of subject matter jurisdiction" rather than "the sufficiency of the [complaint] itself," no presumption of truthfulness applies to the plaintiff's allegations. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Standing is a component of subject-matter jurisdiction. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606-07 (6th Cir. 2007). Thus, when a defendant produces evidence challenging the factual existence of standing, a plaintiff must generally prove standing with evidence, even at the motion-to-dismiss stage. *See*

*Taylor v. KeyCorp*, 680 F.3d 609, 613 (6th Cir. 2012); *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015).

But the County overlooks an exception to this rule. If "an attack on subject matter jurisdiction . . . implicates an element of the cause of action," we confine our jurisdictional inquiry to the allegations in the plaintiff's complaint, no matter what evidence a defendant has submitted in attempting to disprove jurisdiction. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.,* 491 F.3d 320, 330 (6th Cir. 2007); *see also Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350–352 (5th Cir. 1989). Here, Harris alleges that the County violated § 1983 by depriving her of property without due process. The County contends that Harris lacks standing because, the County says, she was not deprived of property. Hence the attack on standing implicates an element of the cause of action. We therefore accept as true Harris's allegation that she was deprived of $30, and consider her claim on the merits.

B.

We review de novo the district court's dismissal of Harris's complaint for failure to state a claim. *Moody v. Michigan Gaming Control Bd.,* 847 F.3d 399, 402 (6th Cir. 2017). For purposes of that review, we take all of Harris's well-pleaded factual allegations as true and construe them in the light most favorable to Harris. *Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 575 (6th Cir. 2008).

Harris makes two arguments on appeal. First, she says that the defendants violated Ky. Rev. Stat. § 441.265, which authorizes Kentucky counties to recoup some of the costs of incarceration from inmates. Subsection (6) of the statute provides that "any required fees may be automatically deducted from the prisoner's property or canteen account." But Harris contends this provision must be read in light of subsection (1), which provides that prisoners "shall be

required *by the sentencing court* to reimburse the county for expenses incurred by reason of the prisoner's confinement as set out in this section, except for good cause shown." (emphasis added). According to Harris, subsection (1) makes clear that the county cannot require inmates, like her, who are never convicted—much less sentenced—to pay fees.

We have already rejected precisely that interpretation of § 441.265. *See Sickles v. Campbell Cty.*, 501 F.3d 726, 732 (6th Cir. 2007); *accord Cole v. Warren Cty.*, 495 S.W.3d 712, 717-18 (Ky. Ct. App. 2015) *rev. denied* (Aug. 17, 2016) (holding that § 441.265 "unambiguously permits" jails to "deduct[] [fees] from . . . prisoners' property or inmate canteen accounts," without an order from a sentencing court). Moreover § 1983 does not provide a remedy for alleged violations of state law, which is all that Harris's § 441.265 claim alleges here. *See Collins v. City of Harker Heights*, 503 U.S. 115, 119 (1992); *accord Jones v. Clark Cty.*, 666 F. App'x 483, 488 (6th Cir. 2016) (declining to consider identical argument).

Harris also argues that, by confiscating and keeping her money, the jail violated her Fourteenth Amendment right to due process. Like the complaint in *Jones v. Clark County* (which Harris says presented "identical" issues), Harris's complaint did not clearly state whether she was alleging a violation of procedural due process, substantive due process, or both. *See* 666 F. App'x at 488 n.2. On appeal, however, Harris emphasizes the County's failure to provide a pre-deprivation hearing, uses the term "procedural due process" five times in her opening brief, and makes no mention of "substantive due process" until her reply brief. *See Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 580 (6th Cir. 2016). We therefore analyze her argument as a procedural due-process claim.

To evaluate that claim, we consider three factors: first, the private interest affected by the challenged action; second, the risk of an erroneous deprivation under existing procedures and the

extent to which additional or alternative procedures would reduce that risk; and third, the government's interest, including the benefits that the government derives from the challenged action and the burdens of implementing additional or alternative procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

We applied this same test to the same claim in *Sickles*, and held that no hearing was required before a Kentucky jail deducted fees for booking and housing from two inmates' canteen accounts. 501 F.3d at 728-29. The same reasoning applies here. There, the private interest was small because the fees were modest: $20 for one inmate and $110 for the other. *Id.* at 730. Here, the fees were $30. There, the risk of erroneous deprivation was minor: computation of the fees required little more than routine accounting and the jail had an internal grievance procedure that could be used to challenge erroneous charges. *Id.* at 730-31. The same is true here. There, the government's interests—furthering offender accountability and reducing the county's costs of incarceration—were substantial. *Id.* at 731. Again, the same is true here.

Harris tries to distinguish *Sickles* on the ground that she was arrested and released after an overnight stay, whereas the inmates in *Sickles* had a longer time to avail themselves of the jail's grievance procedures. But Harris's complaint did not allege that she tried to use these procedures or that they were otherwise inadequate.

Ultimately, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334. Here, as in *Sickles*, given "the modest private interests at stake, the small risk of error, the limited benefits of additional safeguards and the unchallenged government interests in the policy, we see no need to constitutionaliz[e] [additional] procedures" and impose the additional fiscal and administrative burdens that such procedures would entail. 501 F.3d at 731 (citations omitted).

\*     \*     \*

The district court's judgment is affirmed.